UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ELWYN DENNIS                                                                                                  PLAINTIFF

V.                                                               CIVIL ACTION NO. 3:14-cv-443-CWR-FKB

CAROLYN W. COLVIN
Commissioner, United States Social Security Administration                         DEFENDANT

REPORT AND RECOMMENDATION

This cause is before the undersigned for a report and recommendation as to Plaintiff's Motion for Summary Judgment [9] and Defendant's Motion for an Order Affirming the Decision of the Commissioner [11]. Having considered the record in this matter, the undersigned recommends that Plaintiff's motion be granted in part and denied in part, and that Defendant's motion be denied.

**HISTORY**

Plaintiff's application for social security disability and disability insurance benefits was denied initially and upon reconsideration, as well as denied by an Administrative Law Judge (ALJ), on March 28, 2013, [8] at 24,[1] and the Appeals Council on May 9, 2014. *Id*. at 1. Plaintiff was 45 years old at the time of the alleged onset of disability, making him a "younger" person for social security purposes. *Id*. at 22. Plaintiff has a limited education, and before claiming to be disabled, worked as a truck driver, construction worker, construction foreman, material handler and working floor supervisor. *Id*.

---

[1]References to page numbers are to the administrative record as originally paginated.

1

Following the applicable five-step analysis,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 30, 2010 (step 1), and had severe impairments of cervical and lumbar disc disease, chronic bronchitis, obesity, depression and anxiety (step 2). *Id*. at 14. The ALJ concluded that Plaintiff's impairments were not as severe as any impairment listed as presumptively disabling in the applicable regulations (step 3). *Id*. at 15. The ALJ then determined that Plaintiff retained the residual functional capacity (RFC) to perform light work,

> except: he requires the ability to walk around briefly (no more than five minutes) after sitting for thirty minutes, and to sit briefly after standing or walking for thirty minutes; he should never climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; should not be required to perform overheard reaching; he should avoid even moderate exposure to temperature extremes; he should avoid even moderate exposure to pulmonary irritants including fumes, odors, dusts, gases, poor ventilation and chemicals; and he is limited to performing only simple, routine tasks which do not require more than occasional interaction with the general public.

*Id*. at 17. The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4). *Id.* at 22. At step 5, utilizing the testimony of a vocational expert (VE), the ALJ determined that Plaintiff was capable of performing other work and therefore not disabled. *Id*. at 23.

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the plaintiff is determined to be disabled or not disabled, the inquiry ends. The plaintiff bears the burden through the first four steps of the analysis. At the fifth, the defendant must show that there is other substantial work in the national economy that the claimant can perform. *See, e.g., Myers v. Apfel*, 238 F.3d 617, 619-620 (5th Cir. 2001).

**STANDARD OF REVIEW**

When considering social security appeals, this Court's review is limited to determining whether substantial evidence supports the findings made by the Social Security Administration and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Adler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld.

## THE ISSUES PRESENTED

**1.    SSR 06-3p**

Plaintiff first contends that the ALJ committed reversible error in not properly considering the opinion of a nurse practitioner, Charlie Hardin.  Plaintiff maintains that pursuant to Social Security Ruling ("SSR") 06-3p, Hardin's opinion as a treating non-medical source should have been afforded more weight than the ALJ gave, particularly because the ALJ erred in her consideration of the treatment relationship.   [10] at 11-13.

Hardin completed a medical opinion form or questionnaire addressing Plaintiff's ability to perform work-related activities. [8] at 346. Hardin indicated, *inter alia*, that Plaintiff could lift only ten pounds, could stand and walk less than two hours a day and could sit about two hours a day.  *Id.*  In the section requesting identification of medical findings supporting those limitations, Hardin wrote "multiple herniations in lumbar spine" and "failed fusion L-spine x5."  *Id.* at 347. The ALJ addressed Hardin's opinion as follows:

> On May 23, 2011, Charlie Hardin, N.P., opined the claimant [sic] impairments would prevent him from performing even sedentary work activities.  (Exhibit 8F) The undersigned considered Mr. Hardin's opinion, but affords it limited weight for three reasons.  First, as a nurse practitioner, Mr. Hardin is not an acceptable medical source within the meaning of regulations.  Second, whether the claimant is disabled is an issue reserved to the Commissioner pursuant to Social Security 96-5p. Third, it appears that this was the first visit the claimant had with Mr. Hardin; therefore, there [sic] no treatment relationship between claimant and the nurse practitioner existed at that time.

[8] at 21.

Plaintiff argues that Hardin is an "other source" and that SSR 06-3p requires that his opinion be considered.  The ruling does define a nurse practitioner as an "other source" and states:

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p.

The ALJ apparently misread the medical records, since Plaintiff had seen Hardin several times prior to May 23, 2011, albeit at a different clinic. [8] at 306-327. Although acknowledging the error, Defendant argues that the ALJ was not required to consider Hardin's opinion since he was not an acceptable medical source and his opinion was "conclusory."[3] [12] at 10.

As a nurse practitioner, Hardin was not an "acceptable medical sourse." *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a). SSR 06-3p, however, further states:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

With respect to evaluating opinion evidence, 20 C.F.R. §§ 404.1527 and 416.927 state the following:

> (c) *How we weigh medical opinions*. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight . . . , we consider all of the following factors in deciding the weight we give to any medical opinion.

---

[3] Although Defendant argues that Hardin's May 23, 2011, report was "conclusory," Hardin actually answered questions, based on his examination and treatment of Plaintiff, specifying Plaintiff's particular abilities and limitations in lifting, carrying, standing, walking, and sitting and performing various postural activities and physical functions. [8] at 346-350. Hardin also supported his answers with objective medical findings. *Id*. at 347-349.

. . .

  (2) *Treatment relationship.*  Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. . . .

  (i) *Length of the treatment relationship and the frequency of examination.*  Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. . . .

Regarding opinions from "other sources," SSR 06-3p also states:

Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

In her decision, the ALJ gave as a reason for affording Hardin's May 23, 2011, opinion "limited weight" that it appeared to her to be Plaintiff's "first visit" to Hardin, and she therefore concluded that there was "no treatment relationship" between Plaintiff and Hardin at that time. The medical record in this case shows that the ALJ was incorrect. In fact, the medical record shows that Plaintiff had been treated by Hardin on numerous occasions prior to May 23, 2011, and that Plaintiff and Hardin had a treatment relationship dating back to 2009.

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).  And as noted *supra*, it is not this Court's job to reweigh the evidence on social security appeals.

Accordingly, since the weight given to Hardin's opinions was based in part on an erroneous determination of the treatment relationship between Plaintiff and Hardin, the undersigned recommends that this case be remanded for a complete review of the medical record in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSR 06-3p.

**2.      Other Work**

Plaintiff next argues that the ALJ did not establish that there is work Plaintiff can perform and did not resolve a conflict between the testimony of the Vocational Expert (VE) and the Dictionary of Occupational Titles (DOT), as required.

SSR 004p states that:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Plaintiff first notes that although the VE testified that Plaintiff can perform the job of laundry worker and gave the DOT number for that job as 366.687-030, there is no job with that DOT number. Defendant acknowledges this error as well, but argues that it is harmless since the VE testified that Plaintiff could perform two other jobs. [12] at 14-15. Plaintiff next contends, however, that the reasoning level required for the other two jobs the VE testified Plaintiff can perform--laundry presser and laundry sorter--is greater than the reasoning level the ALJ ascribed Plaintiff in the RFC.

The DOT identifies, *inter alia*, the reasoning development required to perform a particular job. Reasoning development is defined on a scale of 1 to 6, with level 1 being the

lowest and level 6 being the highest. The VE in this case testified that Plaintiff could work as a laundry sorter (DOT No. 361.687-014) or a laundry presser (DOT No. 363.684-018). [8] at 60. These jobs list the requisite reasoning level as 2. The DOT describes the reasoning development levels at issue as follows:

> LEVEL 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> LEVEL 1: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Dictionary of Occupational Titles*, App. C (rev. 4th ed. 1991). Plaintiff argues that his RFC limitation to simple, routine tasks necessarily limits him to jobs with a reasoning level of 1, and therefore, he cannot perform any of the jobs listed by the VE in this case.

Plaintiff's attorney questioned the VE on the record regarding Plaintiff's ability to perform the jobs at issue:

> EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:
>
> Q   Okay. If you add to – first of all the jobs you identified that all fit into the ALJ's hypothetical question, which limited the work to occupations that only involve simple, routine, repetitive work, is that right, the jobs that you –
>
> A   Correct.
>
> Q   Okay. These jobs do not require a person to follow detailed written or oral instructions, is that correct?
>
> ....
>
> A   Correct.

> Q    Okay. So the types of jobs you identified as simple and repetitive are those where the worker is called upon to carryout [sic] simple one to two-step instructions with little or no variation, is that correct?
>
> A    Correct, yes.

[8] at 63-64.

Plaintiff argues that this testimony establishes a conflict between the VE's testimony and the DOT. However, the jobs given by the VE require a reasoning ability level of 2, and are classified as unskilled. Plaintiff could, with his RFC as determined by the ALJ, perform unskilled work. Plaintiff's limitation to simple, routine tasks does not preclude these jobs. "[C]ases either hold or intimate that a limitation to simple and repetitive tasks is *consistent* with a reasoning level of 2." *Gaspard v. Social Security Administration*, 609 F. Supp. 2d 607, 617 (E.D. Tex. 2009)(emphasis in original); see also *Ealy v. Colvin*, 2014 WL 3928193 at *3 (S.D. Miss. Aug. 12, 2014) (finding limitation to simple and routine, repetitive tasks consistent with ability to perform job with a reasoning level of 2); *Smith v. Colvin*, 2014 WL 1407437 at *4 (N.D. Tex. March 24, 2014) (noting that the weight of authority supports the determination that a limitation to simple, routine, repetitive tasks is consistent with the ability to perform jobs with a reasoning level of 2 or 3) (citing *Coleman v. Colvin*, 2013 WL 5353416, at *4 (N.D. Tex. Sept. 25, 2013)); *Melton v. Astrue*, 2012 WL 1004786, at *2-*3 (N.D. Miss. Mar. 26, 2012) (limitation to "simple, routine, repetitive tasks involving only simple work related decisions" consistent with performance of work with a reasoning level of 2); *Fletcher v. Astrue*, 2010 WL 1644877, at *4 (N.D. Tex. Mar. 31, 2010) (observing that "[c]ourts have acknowledged that the ability to perform non-complex work is consistent with reasoning level two"). This case is distinguishable from *Lloyd v. Astrue*, 2012 WL 3685967 (S.D. Miss. June 21, 2012), which was remanded for further development of the record where a VE testified that a claimant with a described reasoning level of 1

could perform jobs with a reasoning level of 3.  The jobs the VE identified in this case have a reasoning level of 2.  The undersigned does not consider this issue to require further development on remand.

## CONCLUSION

For the reasons stated above, the undersigned recommends that Plaintiff's motion [9] be granted in part and denied in part, Defendant's motion [11] be denied, and this matter be remanded for consideration of all medical records under the applicable standards.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636.

Respectfully submitted on the 27th day of May, 2015.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE